IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KENNETH SEGAL, et al | : |
| Plaintiffs | : CIVIL ACTION NO. 07-4647 |
| vs. | : |
| STRAUSSER ENTERPRISES, INC., et al | : |
| Defendants | : |

**MEMORANDUM**

Henry S. Perkin, M.J.                                                                                                 February 10, 2012

      This matter is before the Court on plaintiffs' letter motion dated December 15, 2011. See Docket No. 264. The letter motion seeks an order compelling the Strausser defendants[1] to produce certain documents provided to them by Lafayette Ambassador Bank ("LAB") following the October 13, 2011 deposition of LAB's Chief Executive Officer and President.[2] The letter response of the Strausser defendants was provided to this Court on December 22, 2011. See Docket No. 265. On January 3, 2012, the undersigned directed that copies of the withheld documents be filed and provided to this Court for *in camera* review. See Docket No. 258. Having reviewed and considered the contentions of the parties, as well as the

---

[1]     In this Memorandum, "Strausser defendants" refers to Strausser Enterprises, Inc. and Gary Strausser.

[2]     More specifically, plaintiffs seek production of letters authored by Patrick C. Campbell, Jr., Esquire (counsel for the Strausser defendants) including a September 16, 2011 letter to Quakertown National Bank and March 19, 2009 and May 18, 2011 letters to Nick Azzolina, CPA. These letters have been withheld by the Strausser defendants on the basis of attorney work product.

documents at issue, this Court is prepared to rule on this matter.[3]

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs, Kenneth Segal ("Segal"), Adam Segal, as trustee for and on behalf of the Karen and Kenneth Segal Descendents Trust ("Trust"), and Segal and Morel, Inc. ("S&M") initiated this action on November 5, 2007 by filing a four-count civil Complaint against Strausser Enterprises, Inc. ("SEI"), Gary Strausser ("Strausser") and SEI's attorney, Leonard Mellon ("Mellon"). The Complaint alleges four state-law claims: tortious interference with contract (Count I), tortious interference with prospective contractual relations (Count II), malicious prosecution under the Dragonetti Act, 42 Pa.C.S.A. §§ 8351-8354 (Count III), and abuse of process (Count IV).

According to the Complaint, this action arises from purchase agreements whereby plaintiff S&M contracted to purchase several parcels of land from defendant SEI. SEI retained certain limited rights of first refusal to repurchase some of the parcels under specific contractually defined circumstances.[4]

---

[3]   By Standing Order dated March 19, 2007, the Honorable James Knoll Gardner, who is the United States District Judge assigned to this case, has referred all discovery disputes to the attention of the undersigned for resolution.

[4]   According to the Complaint and the documents attached thereto, two agreements granted rights of first refusal to SEI. The June 11, 2002 Agreement provided, in pertinent part, as follows:

> [S&M] acknowledges that Phase II is a four-year build out and agrees to aggressively market the purchased properties to homebuyers. Should [S&M] be unable to market the properties sucessfully, absent any government imposed moratorium, building an average of 20 units per year over a four (4) year period, it hereby agrees to give [SEI] a right of first refusal to take back the approved and improved lots at the same price continued [sic] herein.

See Complaint, Exhibit B, June 11, 2002 Agreement at § 5.17.4. The April 25, 2003 Agreement provided, in pertinent part, as follows:

> Should [S&M] decide to sell all or some of the lots [S&M] hereby agrees to give

S&M subsequently assigned all rights and obligations arising under the purchase agreements and subsequent amendments to several limited liability companies (the "S&M LLCs") of which plaintiff Segal and the Trust are the only members. Plaintiffs allege that on December 21, 2005, Segal and the Trust (collectively the "Segal sellers") contracted to sell their interests in the S&M LLCs to K. Hovnanian Pennsylvania Acquisitions, LLC ("Hovnanian"), by way of a sales agreement that took several months to negotiate and finalize ("the Hovnanian agreement").

Plaintiffs allege that the Segal sellers attempted to meet with the Strausser defendants to discuss the sale of memberships in the S&M LLCs to Hovnanian, but that, in an attempt to interfere with the sale to Hovnanian and to gain leverage by which to gain monetary concessions from the Segal sellers, Strausser and other SEI representatives refused to meet with the Segal sellers. The Complaint further alleges that on February 13, 2006, just two days prior to closing on the Hovnanian agreement, SEI, through its attorney, defendant Mellon, filed a lawsuit in the Court of Common Pleas of Northampton County, Pennsylvania to stop the transfer of the properties based on a right of first refusal, as well as a notice of entry of *lis pendens* against the property.

As a result of the *lis pendens*, plaintiffs allege that Hovnanian refused to proceed with the closing. Plaintiffs aver that the Strausser defendants refused to withdraw the *lis*

---

[SEI] a right of first refusal to take back the approved and improved lots.

See Complaint, Exhibit D, April 25, 2003 Agreement at § 5.17.4.

Both of these agreements were executed by the seller, SEI, and buyer, S&M. More specifically, the Court notes that Gary J. Stausser, as president for SEI, executed the agreements on behalf of SEI and Kenneth Segal, as president for S&M, executed the agreements on behalf of S&M.

*pendens*, and Hovnanian terminated the Hovnanian agreement because the Segal sellers were unable to provide good title to the properties.

The Complaint alleges that the filing of the Northampton County lawsuit was frivolous and in bad faith because defendants SEI, Strausser and Mellon all knew that the purchase agreements had binding arbitration clauses; the transaction with Hovnanian did not trigger the right of first refusal clauses; and the Strausser defendants lacked the financial ability to exercise the rights of first refusal, even if properly triggered.  In response to these allegations, the Strausser defendants have asserted an "advice of counsel" defense and acknowledge that they have waived any privilege protection that may have existed with respect to documents and information concerning the advice relied upon in filing the Northampton County lawsuit regarding rights of first refusal and the filing of the *lis pendens*.[5]

## DISCUSSION

On October 13, 2011, plaintiffs conducted the deposition of LAB's Chief Executive Officer and President.  During this deposition, the deponent testified that after LAB requested a legal opinion concerning the validity of the claims and/or defenses at issue in this litigation, LAB received a letter from counsel for the Strausser defendants (Patrick C. Campbell, Jr., Esquire) indicating "that Mr. Strausser . . . has a good case."  The deponent further testified that LAB would occasionally seek updates from Mr. Campbell concerning the validity of the claims at issue in this litigation, including when LAB was deciding whether "to renew or extend additional credit to Mr. Strausser."  Upon learning this information, plaintiffs' counsel requested

---

[5] At the time of the filing of the Northampton County lawsuit and *lis pendens*, the Strausser defendants were represented by Defendant Leonard Mellon. It is Mr. Mellon's advice that the Strausser defendants assert they relied upon in connection with the filing of the Northampton County lawsuit and *lis pendens*.

copies of Mr. Campbell's letter, any updates to that letter, and any documents dealing with the viability, or lack thereof, of any claims or defenses in this litigation. Counsel for the Strausser defendants now asserts that the letters plaintiffs seek are protected from disclosure as attorney work product.

In their letter motion, plaintiffs assert that the letters at issue are not entitled to work product protection because they were not prepared in anticipation of litigation but, rather, were prepared in the ordinary course of business. Further, even assuming that the letters are entitled to such protection, plaintiffs assert that the Strausser defendants waived any such protection by disclosing the documents to third parties. Relying primarily on <u>Vanguard Savings & Loan Ass'n v. Banks</u>, No. 93-CV-4627, 1995 U.S. Dist. LEXIS 13712 (E.D. Pa. September 18, 1995) (Naythons, M.J.), however, the Strausser defendants assert that the requirement that documents subject to the work product doctrine be prepared in "anticipation of litigation" is not in the literal. Further, they contend that they did not make any disclosure which they would fairly perceive served as a conduit to a potential adversary. For the following reasons, we agree with the Strausser defendants.

Under Federal Rule of Civil Procedure 26(b)(3), plaintiffs "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." In <u>Vanguard</u>, the Court found that documents prepared for the business purpose of satisfying the regulatory examination required by the Pennsylvania Department of Banking, containing individual case summaries with opinions as to the outcome of the litigation, qualified as protected work product. <u>Vanguard</u>, 1995 U.S. Dist. LEXIS 13712,

at *11 (citing Simon v. G.D. Searle & Co., 816 F.2d 397, 401-402 (8th Cir.), cert. denied, 484 U.S. 917 (1987) (finding that although risk management documents may not have been prepared in anticipation of litigation, they were nonetheless protected because they revealed the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim)).

Based on this Court's *in camera* review, we conclude that the letters in question clearly contain the mental impressions, thoughts, conclusions, and evaluations of Mr. Campbell concerning this litigation. The Strausser defendants advise that it because of this litigation that the information was disseminated to their accountant so that the company could comply with federal law. "But for the litigation, although a report would be required, such report would not contain information otherwise subject to the work product privilege." See Strausser defendants letter response at 2. We agree with the Strausser defendants that the letters constitute opinion work product which are protected from disclosure under the work product doctrine. See Fed. R. Civ. P. 26(b)(3).

Plaintiffs assert, however, that the Strausser defendants waived any such protection by disclosing the documents to third parties. The work product doctrine, like the attorney-client privilege, may be inadvertently waived through disclosure. Vanguard, 1995 U.S. Dist. LEXIS 13712, at *12-13 (citing United States v. Gulf Oil Corp., 760 F.2d 292, 295 (5th Cir. 1985); United States v. Nobles, 422 U.S. 225, 239 (1975) (privilege derived from work product doctrine may be waived); Appeal of Hughes, 633 F.2d 282, 288 (3d Cir. 1980).

The Third Circuit has recognized that a party may waive work product protection through disclosure to a third party if the third party in question is deemed to be "an adversary". See Westinghouse v. Republic of the Phillipines, 951 F.2d 1414, 1427-1428 (3d Cir. 1991).

However, if the disclosure is either inadvertent or made to a non-adversary, it is appropriate to ask whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials. Id. at 1431. In Vanguard, the Court was not as concerned with whether the third parties were in fact adversaries or non-adversaries, but instead concluded that the work product doctrine was not waived because the disclosures were not made with conscious disregard of the possibility that an adversary might obtain the protected materials. Vanguard, 1995 U.S. Dist. LEXIS 13712, at *14 (citing Westinghouse, 951 F.2d at1431. Such is the case here.

Based on the information provided to this Court, the Strausser defendants were required to provide information concerning this litigation to their accountant for reporting purposes. In addition, they were likewise required to provide information to Quakertown National Bank in an effort to continue their business relationship. Pursuant to this Court's review of the letters in question, it is clear that the Strausser defendants did not make any disclosure which they would fairly perceive served as a conduit to a potential adversary. The letters were explicitly identified as privileged and confidential and were specifically not to be disseminated without the permission of the client and counsel. Accordingly, we conclude that the Strausser defendants did not waive the attorney work product doctrine. For the foregoing reasons, we deny plaintiffs' letter motion to compel.

An appropriate Order follows.