### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

|   |   |   |
|---|---|---|
| | : | |
| KENNETH SEGAL, et al | : | |
| | : | CIVIL ACTION NO. 07-4647 |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| STRAUSSER ENTERPRISES, INC., et al | : | |
| | : | |
| Defendants | : | |
| | : | |

---

### MEMORANDUM

**Henry S. Perkin, M.J.**                                              **August 8, 2013**

This matter is before the Court following the remand Order of the Honorable James Knoll Gardner dated March 22, 2013.  See Docket No. 329.  A hearing was conducted before the undersigned on April 11, 2013 for reconsideration of whether the tax returns of Plaintiffs Kenneth Segal and the Karen and Kenneth Segal Descendant's Trusts are discoverable. In conjunction with the Hearing/Argument Scheduling Order, the parties were directed to submit argument briefs concerning the foregoing issue.  Defendants Strausser Enterprises, Inc.'s and Gary Strausser's Memorandum of Law in Support of Motion to Compel Production of Tax Returns of Plaintiffs Ken Segal and the Karen and Kenneth Segal Descendants Trust was filed on April 9, 2013.  See Docket No. 332.  Plaintiffs' Argument Brief in Opposition to the Discoverability of Plaintiffs' Tax Returns was also filed on April 9, 2013.  See Docket No. 331. Having conducted the hearing and having considered the contentions of the parties,[1] as well as

---

[1]       This Court has also considered the responses of counsel for Defendant to two questions posed by the undersigned during the April 11, 2013 hearing, which responses are memorialized in a letter to the undersigned dated April 24, 2013.  Copies of this letter were provided to counsel for all parties.

the remand Order of Judge Gardner, this Court is prepared to rule on this matter.

FACTUAL HISTORY

Plaintiffs, Kenneth Segal ("Segal"), Adam Segal, as trustee for and on behalf of the Karen and Kenneth Segal Descendents Trust ("Trust"), and Segal and Morel, Inc. ("S&M") initiated this action on November 5, 2007 by filing a four-count civil Complaint against Strausser Enterprises, Inc. ("SEI"), Gary Strausser ("Strausser") and SEI's attorney, Leonard Mellon ("Mellon").  The Complaint alleges four state-law claims: tortious interference with contract (Count I), tortious interference with prospective contractual relations (Count II), malicious prosecution under the Dragonetti Act, 42 Pa.C.S.A. §§ 8351-8354 (Count III), and abuse of process (Count IV).

According to the Complaint, this action arises from purchase agreements whereby plaintiff S&M contracted to purchase several parcels of land from defendant SEI.  SEI retained certain limited rights of first refusal to repurchase some of the parcels under specific contractually defined circumstances.[2]

---

[2]     According to the Complaint and the documents attached thereto, two agreements granted rights of first refusal to SEI.  The June 11, 2002 Agreement provided, in pertinent part, as follows:

> [S&M] acknowledges that Phase II is a four-year build out and agrees to aggressively market the purchased properties to homebuyers.  Should [S&M] be unable to market the properties sucessfully, absent any government imposed moratorium, building an average of 20 units per year over a four (4) year period, it hereby agrees to give [SEI] a right of first refusal to take back the approved and improved lots at the same price continued [sic] herein.

See Complaint, Exhibit B, June 11, 2002 Agreement at § 5.17.4.  The April 25, 2003 Agreement provided, in pertinent part, as follows:

> Should [S&M] decide to sell all or some of the lots [S&M] hereby agrees to give [SEI] a right of first refusal to take back the approved and improved lots.

See Complaint, Exhibit D, April 25, 2003 Agreement at § 5.17.4.

S&M subsequently assigned all rights and obligations arising under the purchase agreements and subsequent amendments to several limited liability companies (the "S&M LLCs") of which plaintiff Segal and the Trust are the only members.  Plaintiffs allege that on December 21, 2005, Segal and the Trust (collectively the "Segal sellers") contracted to sell their interests in the S&M LLCs to K. Hovnanian Pennsylvania Acquisitions, LLC ("Hovnanian"), by way of a sales agreement that took several months to negotiate and finalize ("the Hovnanian agreement").

Plaintiffs allege that the Segal sellers attempted to meet with the Strausser defendants[3] to discuss the sale of memberships in the S&M LLCs to Hovnanian, but that, in an attempt to interfere with the sale to Hovnanian and to gain leverage by which to gain monetary concessions from the Segal sellers, Strausser and other SEI representatives refused to meet with the Segal sellers.  The Complaint further alleges that on February 13, 2006, just two days prior to closing on the Hovnanian agreement, SEI, through its attorney, defendant Mellon, filed a lawsuit in the Court of Common Pleas of Northampton County, Pennsylvania to stop the transfer of the properties based on a right of first refusal, as well as a notice of entry of *lis pendens* against the property.

As a result of the *lis pendens*, plaintiffs allege that Hovnanian refused to proceed with the closing.  Plaintiffs aver that the Strausser defendants refused to withdraw the *lis pendens*, and Hovnanian terminated the Hovnanian agreement because the Segal sellers were

---

Both of these agreements were executed by the seller, SEI, and buyer, S&M.  More specifically, the Court notes that Gary J. Stausser, as president for SEI, executed the agreements on behalf of SEI and Kenneth Segal, as president for S&M, executed the agreements on behalf of S&M.

[3]   In this Memorandum, "Strausser defendants" refers to Strausser Enterprises, Inc. and Gary Strausser.

unable to provide good title to the properties.

The Complaint alleges that the filing of the Northampton County lawsuit was frivolous and in bad faith because defendants SEI, Strausser and Mellon all knew that the purchase agreements had binding arbitration clauses; the transaction with Hovnanian did not trigger the right of first refusal clauses; and the Strausser defendants lacked the financial ability to exercise the rights of first refusal, even if properly triggered.  In response to these allegations, the Strausser defendants have asserted an "advice of counsel" defense and acknowledge that they have waived any privilege protection that may have existed with respect to documents and information concerning the advice relied upon in filing the Northampton County lawsuit regarding rights of first refusal and the filing of the *lis pendens.*[4]

## PROCEDURAL HISTORY

On March 28, 2011, the Strausser defendants submitted to the undersigned an informal letter motion to compel discovery of the tax returns of Kenneth Segal and the Trust from 2003 to 2009.  By Order dated April 12, 2011, the undersigned denied the Strausser defendants' motion but added "if discovery discloses additional information pertaining to this issue, broader discovery may be permitted in the future."  See Docket No. 204.

On December 6, 2011, the Strausser defendants provided this Court with a second informal letter motion to compel discovery, which again requested an order compelling plaintiffs to produce all tax returns of Mr. Segal and the Trust, this time from 2003 to 2010.  The Strausser defendants contended that the requested tax returns contain information necessary for them to

---

[4]        At the time of the filing of the Northampton County lawsuit and *lis pendens*, the  Strausser defendants were represented by Defendant Leonard Mellon.  It is Mr. Mellon's advice that the Strausser defendants assert they relied upon in connection with the filing of the Northampton County lawsuit and *lis pendens*.

accurately investigate the extent and veracity of plaintiffs' damages.

On January 3, 2012, after consideration of the issues, the undersigned granted the Strausser defendants' motion to compel discovery and ordered plaintiffs to provide them with the requested tax returns.  See Docket No. 257.  Plaintiffs sought review of this Order by filing Plaintiffs' Petition to Reconsider the Order of Magistrate Judge Henry S. Perkin Dated January 3, 2012 on January 17, 2012.  In so doing, plaintiffs requested that Judge Gardner reverse the undersigned's January 3, 2012 Order, and deny the Strausser defendants' motion to compel discovery.

On March 22, 2013, Judge Gardner granted plaintiffs' petition for reconsideration and remanded this issue to the undersigned for additional consideration concerning the discoverability of plaintiffs' tax returns using the two-prong test articulated in In re Sunrise Securities Litigation, 130 F.R.D. 560, 578 (E.D.Pa. 1989) (O'Neill, J.).  See Docket No. 329. Judge Gardner's Order also provides that the undersigned should consider all relevant information including the following:

> (1)  Whether plaintiffs complied with their promise, made in response to the denial of defendants' first motion to compel discovery filed March 28, 2011, to provide defendants with "a substantial amount of information relating to their damages and/or to the financial condition of Plaintiffs Segal and Morel, Inc. and the [Trust] that should enable [defendants] to assess the extent and veracity of plaintiffs' damages."

> (2)  Whether the information and documentation already supplied to defendants by plaintiffs through previous discovery including, but not limited to, the ledger books of S&M LLCs and Mr. Segal's redacted Schedules B and E to his personal tax returns, contain sufficient information to adequately inform defendants of the extent and veracity of plaintiffs' damages.

> (3)  Whether the "Tax Benefit Rule", articulated in Randall v. Loftsgaarden,

5

478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed. 525 (1986) can be extended to apply to this case and preclude defendants from off-setting plaintiffs' damages by the amount of tax benefits realized by plaintiffs resulting from their continued investment in the S&M LLCs.

See Docket No. 329.

DISCUSSION

An individual has a privacy interest in his tax returns, thus, "public policy favors nondisclosure of income tax returns." Jackson v. Unisys, Inc., 2010 WL 10018 at *2 (E.D.Pa. January 4, 2010) (Jones II, J.) (citing DeMasi v. Weiss, 669 F.2d 114, 119-20 (3d Cir. 1982)).

Accordingly, the correct standard to be applied to the discovery of income tax returns is a two-part test: (1) the tax returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable. In re Sunrise Securities Litigation, 130 F.R.D. 560, 578 (E.D.Pa. 1989) (O'Neill, J.). While the party seeking discovery bears the burden of proving relevance, the party resisting discovery bears the burden of showing the information is available elsewhere. Id.

Plaintiffs aver, and the Strausser defendants do not contest, that they have already produced voluminous documents to the Strausser defendants reflecting plaintiffs' financial condition, as well as the financial condition of the S&M LLCs, in order for the Strausser Defendants to properly assess plaintiffs' alleged damages.  More specifically, plaintiffs have produced the following: (1) the tax returns for S&M, Inc. and the S&M LLCs for 2004 through 2010 (as proof of such entities' profits and/or losses over the requested period); (2) a complete set of the internal financial statements and general ledgers for S&M, Inc. and the S&M LLCs by month and year from 2006 to 2011 (as proof of the financial activities of these entities during the

6

requested period); (3) all balance sheets reflecting the profit, loss and gross revenues of S&M, Inc. and the S&M LLCs; (4) reports identifying plaintiffs' job costs for each home, townhome or condominium sold by the S&M LLCs at Riverview; and (5) reports detailing sale prices and costs incurred for each unit sold by the S&M LLCs at Riverview.

In addition, and subsequent to our prior ruling on this matter, we note that while plaintiffs did not concede the relevance or discoverability of any portion of Mr. Segal's and/or the Trust's tax returns, they did provide, in an effort to resolve this ongoing discovery issue, the Strausser defendants with redacted copies of Schedules B (used to report interest/dividend income) and E (used to report supplemental income or loss from partnerships, S corporations, estates, trusts, etc.) that were affixed to Mr. Segal's personal tax returns for the years 2006 through present. Plaintiffs advise that these portions of the returns have been redacted such that they identify only income or losses passed through to Mr. Segal and/or the Trust from the S&M LLCs, as well as any loan interest paid to Mr. Segal from these entities. The redacted Schedules exclude financial information concerning Mr. Segal's investments/income from entities unrelated to this action.

Despite having received these portions of the sought-after tax returns, the Strausser defendants continue to aver that their forensic accountant expert finds it necessary to review the entire returns, including Schedules A (pertaining to itemized deductions) and C (pertaining to profit or loss from business).[5]   Having been given the opportunity to present

---

[5]        Schedule A is used to figure your itemized deductions. In most cases, your federal income tax will be less if you take the larger of your itemized deductions or your standard deduction. If you itemize, you can deduct a part of your medical and dental expenses and unreimbursed employee business expenses, and amounts you paid for certain taxes, interest, contributions, and miscellaneous expenses. You can also deduct certain casualty and theft losses.

evidence at the hearing on this issue of necessity, however, I note that the Strausser defendants failed to present any expert reports or testimony bearing on this issue.  Relying solely on the representations and argument presented by counsel for the Strausser defendants, which this Court has thoughtfully considered, I am unable to conclude that the additional information sought is necessary to analyzing plaintiffs' claim of damages.  Moreover, in response to the Court's inquiry at the hearing, plaintiffs have advised the undersigned through correspondence dated April 24, 2013 that to the extent they exist, Schedules A and C for the years 2006 through 2010 do not identify any deductions arising from the subject matter in this action nor do they identify any activity related to this action.

Based on my review of the briefs submitted as well as my consideration of the parties' argument at the hearing, I conclude that the Strausser defendants have not made an adequate showing that the remaining portions of the desired tax returns contain relevant information not already contained within the documents that plaintiffs have already produced, or which may be otherwise readily obtainable.  While certain portions of the tax returns at issue may be relevant to demonstrate loss, I conclude that the entire tax returns are not relevant.  Schedules B and E provided by plaintiffs in an effort to resolve this matter, as well as the production of other documents containing financial information referenced above, appear to sufficiently advance the issue as to plaintiffs' claim of damages at this time.  Accordingly, because I find that

---

Schedule C is used to report income or loss from a business you operated or a profession you practiced as a sole proprietor. An activity qualifies as a business if your primary purpose for engaging in the activity is for income or profit and you are involved in the activity with continuity and regularity.

See Schedule A (Form 1040), Itemized Deductions, http://www.irs.gov/uac/Schedule-A-(Form-1040), -Itemized-Deductions, and Schedule C (Form 1040), Profit or Loss From Business, http://www.irs.gov/uac/Schedule-C-(Form-1040),-Profit-or-Loss-From-Business (last visited August 7, 2013).

the Strausser defendants have failed to establish relevancy at this time as well as a compelling

need for the remaining portions of the tax returns, I must deny the Strausser defendants' motion

to compel.

       Finally, I must discuss the implications of the "tax benefit rule" as an additional

basis for denying the Strausser defendants' motion to compel.  In conjunction with their efforts,

the Strausser defendants have previously argued that Mr. Segal's purported tax benefits are

related to plaintiffs' potential damages and in an effort to test or challenge such alleged damages,

it is essential for them, and their expert, to review the tax returns at issue in order to properly

examine and challenge any potential damages model proposed by plaintiffs.  Accordingly, it

appears that the Strausser Defendants argue in part that because Mr. Segal and the Trust have

allegedly realized tax benefits in the form of tax deductions and credits resulting from their

continued investment in the S&M LLCs, they are entitled to inspect Mr. Segal's and the Trust's

returns in order to assess plaintiffs' damages.

       Under the "tax benefit rule," established by the United States Supreme Court in

Randall v. Loftsgaarden, 478 U.S. 647 (1986), "plaintiffs will be required to report any damages

recovered in [an] action as taxable income, resulting in a recapture of their tax benefits, and any

prior tax benefits will thereby be disallowed."  Cody v. Edward D. Jones & Co., 502 N.W.2d

558, 562 (S.D. 1993) (quoting Fullmer v. Wohlfeiler & Beck, 905 F.2d 1394, 1402 (10th Cir.

1990)).  Simply put, application of the tax benefit rule ensures that plaintiffs receiving a damage

award will not obtain a double recovery in light of tax benefits or credits previously  received.

Id.

       Courts within this District have denied the discovery of tax returns in situations

where the party seeking such returns has argued that their discovery was warranted to learn of "tax benefits" that might be offset against damages.  For example, in <u>Bove v. Worlco Data Systems, Inc.</u>, No. 86-1419, 1987 U.S. Dist.  LEXIS 422 at *2 (E.D. Pa. Jan. 21, 1987), the defendants sought the production of the plaintiffs' personal income  tax returns, arguing that if the plaintiffs' participation in a limited partnership was motivated  in part by tax planning, any damages caused by the defendants' alleged failure to fulfill their obligations must be reduced by the tax savings that the plaintiffs gained as a result of the  plaintiffs' participation in the partnership.  Relying on <u>Randall</u>, the District Court concluded  that the tax information sought was irrelevant, <u>id.</u> at *4, and refused to compel production of the returns.  <u>Id.</u> at *7.  Relying upon the foregoing cases as well as the information contained in plaintiffs' brief on this issue, I find that the "tax benefit rule" serves as an additional basis in which to deny discovery of the remaining portions of the tax returns.[6]

For the foregoing reasons, we deny the Strausser defendants' motion to compel. An appropriate Order follows.

---

[6]     During the hearing on this discovery issue, I find that plaintiffs properly stated the "tax benefit rule" and although the Strausser defendants appeared to recognize its implications, they continued to argue that any tax benefits received by plaintiffs may  be relevant as to a potential theory based on plaintiffs' alleged failure to mitigate.  For example, the Strausser defendants argued that if plaintiffs withheld the sale of certain land in exchange for favorable tax consequences, thereby failing to mitigate, any tax benefits received by plaintiff would be relevant to a failure to mitigate theory.  As I believe I indicated at the time of the hearing, this theory would be an issue for trial. Nothing in this Memorandum or accompanying Order shall be construed as barring this potential mitigation theory at the time of trial.